UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UCP INTERNATIONAL COMPANY LIMITED, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BALSAM BRANDS INC., et al., <br><br> Defendants. | Case No. 16-cv-07255-WHO <br><br> **ORDER DENYING MOTION TO DISMISS** <br><br> Dkt. No. 42, 43, 47, 50 |

## INTRODUCTION

Balsam Brands Inc. and Balsam International Unlimited Company (together "Balsam") move to dismiss the declaratory judgment action filed by UCP International Company Limited and Global United Enterprises Limited (together "UCP"), arguing that there is no valid case or controversy between the parties. Although Balsam admits that there is an existing legal controversy between it and UCP regarding whether UCP's Inversion Tree infringes Balsam's Flip Tree patents, it contends that UCP lacks standing to seek a declaratory judgment because Balsam has not clearly indicated any intent to sue UCP for patent infringement. But a defendant's representations that it does not intend to sue cannot defeat Article III standing in a declaratory judgment case. UCP has demonstrated that it has standing and Balsam's motion to dismiss UCP's complaint is DENIED.

## BACKGROUND

UCP manufactures and sells an artificial invertible Christmas tree called the Inversion Tree. First Amended Complaint ("FAC") ¶2. It has patents pending on the Inversion Tree. FAC ¶23. Balsam is a leading retailer of artificial Christmas trees and sells a product called the Flip Tree. FAC ¶17. Balsam has two U.S. patents on the Flip Tree. ¶9.

In August, 2015, Balsam learned that Frontgate, a catalog and online retailer, was selling the Inversion Tree, which Balsam believed was infringing on Balsam's Flip Tree patents. After a short investigation, Balsam filed an infringement suit against Frontgate Marketing, Inc. and Cinmar, LLC on October 20, 2015, alleging that Frontgate was infringing Balsam's patents by selling the Inversion Tree. In an announcement to its customers regarding the lawsuit, Balsam explained that it was "shocked to seek that Frontgate.com was offering an 'Inversion Tree' that appeared to be eerily similar to the Flip Tree . . . We have since learned that by January 2015, one of Frontgate's Chinese Christmas tree suppliers was hard at work designing what we believe is an obvious imitation of the Flip Tree – the product that Frontgate now calls its 'Inversion Tree.'" FAC ¶17. At the time it filed its suit, Balsam was aware that UCP was the Chinese manufacturer of the Inversion Tree but did not name UCP as a defendant in the lawsuit.

Although UCP was not brought into the suit against Frontgate, the Frontgate litigation was entirely about UCP's Inversion Tree. In its discovery responses Balsam accused UCP of designing the infringing invertible trees at issue in the lawsuit. FAC ¶19. Balsam also detailed how UCP's Inversion Tree met each and every one of the claim limitations on Balsam's patents. *Id.* On February 2, 2016, Balsam filed its infringement contentions against Frontgate. FAC ¶20. Every invertible tree identified in Balsam's claims charts was manufactured by UCP and Balsam claimed that UCP's trees met each of the claim limitations on its patents. *Id.* In June of 2016, Balsam contacted the named inventors of UCP's pending patent applications on the Inversion Tree and subpoenaed the lead inventor, David Jalbert. FAC ¶23. Balsam stated that it was seeking Jalbert's "personal insight and recollection as the principal designer of the technology used in the accused products." *Id.* Balsam added that Jalbert's knowledge "goes to the very heart of Frontgate's alleged infringement, including willfulness." *Id.*

During the Frontgate litigation, Balsam also subpoenaed documents and testimony from UCP's U.S. affiliate, UCP International (USA), explaining that it was seeking information from UCP (USA) because UCP is "the designer and manufacturer of the accused products." FAC ¶24. Balsam sought information regarding UCP's design of the Inversion Tree, whether it made any attempts to design around Balsam's patents, and UCP's organizational structure and records. *Id.*

Balsam also sought documents from Michael Stadlberger, an individual who helped sell UCP's invertible trees. FAC ¶25. Balsam sought information about the Inversion Tree's design, Stadlberger's communications with the inventors of the UCP Inversion Tree, and information regarding UCP's corporate structure, affiliates, and agents. *Id.* UCP fought Balsam's attempts to compel discovery from UCP and its agents. FAC ¶24.

On November 1, 2016, because it was struggling to obtain discovery from UCP, Balsam's counsel informed Frontgate's attorneys that it might seek to add UCP as a party to the Frontgate litigation. FAC ¶27. On December 6, 2016 Balsam sent a letter to Frontgate's counsel again stating it was considering whether "UCP should be added to this lawsuit." *Id.*, Ex. A.

In late 2016, I issued my Claim Construction Order in the Frontgate litigation. FAC ¶29. Frontgate indicated it would be filing a motion for summary judgment and seeking an order of non-infringement of Balsam's patents. *Id.* Balsam admits that if Frontgate had won on its motion for summary judgment, it would have "cleared UCP for sale of its Inversion Tree in the United States." *Id.*

In December of 2016, Balsam and Frontgate reached a settlement in the Frontgate litigation. MTD at 4. UCP was not part of the settlement. *Id.* On December 19, 2016 Balsam and Frontgate stipulated to dismiss the case with prejudice and the case was dismissed by the court on December 20, 2016. *Id.* That same day, UCP filed this declaratory judgment action against Balsam. *Id.*

Following the settlement, Frontgate stopped purchasing Inversion Trees from UCP. As Frontgate was UCP's only U.S. customer, UCP no longer has a customer in the United States, but is in discussions with a potential customer to replace Frontgate. UCP is currently searching for warehouse space so that it can directly sell its trees in the United States. It has an existing inventory of Inversion Trees that it is seeking to sell.

On February 16, 2017, Balsam moved to dismiss UCP's complaint arguing that UCP had failed to state a justiciable controversy because UCP had failed to allege that it feared Balsam would bring a lawsuit against it and because UCP had failed to take meaningful steps toward potentially infringing activity. UCP then filed an First Amended Complaint ("FAC"), adding

3

some more details about the Frontgate litigation and its efforts to find a replacement customer for Frontgate and noting that Balsam has refused to give UCP a covenant not to sue.[1] Balsam has now moved to dismiss UCP's FAC, arguing that UCP still has failed to show a justiciable case or controversy.

## LEGAL STANDARD

The Declaratory Judgment Act allows potential infringers to bring claims against patent holders, but only if there is an actual case or controversy between the parties. *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1327-28 (Fed. Cir. 2012). To satisfy Article III's standing requirements a plaintiff must demonstrate that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), *reversed-in-part on other grounds sub nom. Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2017 (2013). The Federal Circuit has held that to demonstrate Article III standing a declaratory judgment plaintiff must allege "(1) an affirmative act by the patentee related to the enforcement of his patent rights, and (2) meaningful preparation to conduct potentially infringing activity." *Id.* at 1318 (internal citations omitted).

## DISCUSSION

Balsam argues that UCP lacks standing to seek a declaratory judgment against it because Balsam is not interested in suing UCP. It admits that it has a legal dispute with UCP. It admits that it could have joined UCP in the Frontgate litigation "either at the outset or at any time after." MTD at 11. It admits that "UCP was already undisputedly making U.S. sales of a product Balsam was accusing of infringement." MTD at 12. It admits that it repeatedly claimed that Frontgate infringed Balsam's patents simply by selling the Inversion Trees and that "by accusing Frontgate

---

[1] Balsam objects to UCP's First Amended Complaint to the extent it includes events that occurred after December 20, 2016, arguing that these additional facts turn the First Amended Complaint into a supplemental pleading, filed without leave of court. It asks that I either ignore any events listed in the Complaint that took place after December 20, 2016 or dismiss the complaint. UCP's post-December 20, 2016 allegations are not necessary to resolve this motion and I do not rely on them.

trees Balsam was necessarily accusing UCP trees." MTD at 11. It admits that it considered bringing claims against UCP in the Frontgate litigation, as recently as December 6, 2016, as a convenient means of getting around UCP's refusal to produce discovery. It ultimately chose not to join UCP, not because it lacked a legal claim against it but because it simply was not interested. "Balsam's concern was with Frontgate, a large, nationwide retailer and Balsam's closest competitor." MTD at 11. Finally, Balsam admits that in settling the Frontgate litigation, Balsam and Frontgate did not resolve the legal issue of whether UCP's Inversion Trees infringe Balsam's patents. Balsam contends that the clear legal dispute between Balsam and UCP is not sufficient for Article III standing because Balsam has no plan to actually bring litigation against UCP.

Balsam's representations and conduct concerning whether it wants to sue UCP are not the measure of Article III standing in a declaratory judgment case. As the Federal Circuit has held, "the Declaratory Judgment Act was designed to fix the problem that arises when the other side does not sue." *Sony Elects. Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1284 (Fed. Cir. 2007). In *Sony Electrics* the Federal Circuit explained that a patent-holder cannot eliminate a valid controversy by simply stating that it has "absolutely no plan whatsoever to sue" the plaintiff. *Id.* Regardless of Balsam's claims regarding its intent to sue UCP, UCP may establish a justiciable controversy by showing "(1) an affirmative act by the patentee related to the enforcement of his patent rights, and (2) meaningful preparation to conduct potentially infringing activity." *MedImmune*, at 1318 (internal citations omitted). UCP has satisfied this burden.

## I.  AFFIRMATIVE ACTS

Balsam's litigation against Frontgate was an affirmative act by Balsam to enforce its patent rights against alleged infringement by UCP's Inversion Tree. Balsam directly accused UCP's trees, and only UCP's trees, of infringing its patents. It admits that by accusing Frontgate's trees it was "necessarily accusing UCP's trees." Its claim charts referred only to UCP's trees and explained how Balsam believed UCP's trees met each and every claim of Balsam's patents. It admits in its briefing that it was aware that UCP was selling Inversion Trees in the United States and that it could have brought an infringement action against it. It admits that it considered bringing an infringement action against UCP, but ultimately decided not to, not because it lacked a

justiciable controversy, but because it was not "interested." This conduct constitutes sufficient "affirmative acts" under *MedImmune*.

"Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007). In *SanDisk*, the Federal Circuit concluded that SanDisk had Article III standing to challenge ST after ST presented SanDisk with detailed analysis of how ST believed SanDisk infringed ST's patents. *Id.* at 1382. Because SanDisk believed it had a right to proceed without paying royalties to ST, there was a "substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant to issuance of a declaratory judgment." *Id.*

Similarly, in *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1378-1379 (Fed Cir. 2012) the Federal Circuit determined that there was a case or controversy where Avery effectively accused 3M of infringing its patents but did not bring suit. Avery's IP counsel had informed 3M's IP counsel over the phone that a specific 3M product "may infringe" Avery's patents, had told him that "licenses are available," and two days later had followed up by saying Avery would be sending 3M claim charts. *Id.* at 1379. The court concluded based on these communications that Avery had "effectively charged 3M with infringement" which was sufficient to confer Article III standing. *Id.*; *see also Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 96 (1993) (When "a party has actually been charged with infringement of the patent, there is, necessarily, a case or controversy adequate to support Article III standing.").

The facts here meet the standards outlined in *SanDisk* and *Avery*. In the Frontgate litigation, Balsam took the position that UCP's Inversion Tree infringes Balsam's patents. It effectively charged UCP with infringement by bringing infringement claims against Frontgate based solely on it selling UCP's trees. As it admits, accusing Frontgate's trees meant it was necessarily accusing UCP's trees. Balsam also provided detailed claim charts outlining how UCP's Inversion Tree infringes its patents. There is no dispute that Balsam has taken the position that UCP's Inversion Tree infringes its patents. This position puts UCP in the position of "either

pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk*, 480 F.3d at 1380. Balsam's actions during the Frontgate litigation are sufficient to demonstrate a justiciable case or controversy between Balsam and UCP.

Balsam argues that a lawsuit against a manufacturer's customer is not sufficient for Article III standing. It highlights three cases. *See Proofpoint, Inc. v. Innova Patent Licensing, LLC*, No. 5:11-CV-02288-LHK, 2011 WL 4915847 (N.D. Cal. 2011); *Adobe Systems Inc. v. Kelora Sys. LLC*, No. C 11-3938 CW, 2011 WL 6101545 (N.D. Cal. Dec. 7, 2011); *Cisco Systems, Inc., Alberta Telecommunications Research Centre*, 892 F. Supp. 2d 1226 (N.D. Cal. 2012). While these cases demonstrate that not all lawsuits against a customer are sufficient to confer Article III standing to the manufacturer, they do not parallel the facts in this case. *Proofpoint*, *Adobe*, and *Cisco* all involved use claims, where the patentees alleged that some of Proofpoint's, Adobe's and Cisco's customers infringed their patents by using the companies' products. *See e.g.*, *Proofpoint*, 2011 WL 4915847 at *4-5 (finding no clear case or controversy where Innova had alleged that Proofpoint's customers infringed its patents by *using* Proofpoint's products, but did not allege that making or selling the products was on its own infringing). Given the nature of the claims brought against their customers, in these cases it was not evident that Proofpoint, Adobe, and Cisco would face any infringement liability since simply selling their products would not constitute direct infringement and would not necessarily result in indirect infringement liability. *See e.g.*, *Cisco*, 892 F. Supp. 2d at 1232 ("the mere fact that Cisco supplied components to the alleged infringers, without more, does not create a dispute regarding indirect infringement.").

This is not the case here. As Balsam admits, its claims against Frontgate were based solely on its selling UCP's Inversion Trees, something UCP itself did. Unlike in *Proofpoint*, *Adobe*, and *Cisco*, Balsam's infringement claims against Frontgate, based on its sales of UCP's trees, necessarily demonstrate a case or controversy with UCP.

## II. PREPARATION TO CONDUCT INFRINGING ACTIVITY

UCP has demonstrated that is has already engaged in, and plans to continuing engaging in, activities that Balsam has alleged infringe its Flip Tree patents. There is no dispute that UCP sold its Inversion Trees into the U.S. market. Balsam has already conceded that it could have sued

7

1  UCP based on these sales. UCP has also indicated that, although it has lost its only U.S. customer, it has an existing inventory of Inversion Trees and plans to sell these trees in the U.S. market. UCP is also awaiting U.S. patents on its Inversion Trees.

Balsam asserts that UCP cannot show meaningful steps to infringe by pointing to its sales of trees to Frontgate because Balsam and Frontgate have settled their dispute over those trees and so UCP no longer has any "bona fide concern" regarding those sales. MTD at 17. But Balsam also admits that the settlement was only between Frontgate and Balsam and did not include UCP. Reply at 12. It is therefore unclear why this settlement would resolve any "bona fide concern" UCP had with regard to the Frontgate sales. UCP still faces potential infringement liability on those sales even if Frontgate does not. Balsam does not attempt to argue that UCP's sales to Frontgate did not constitute meaningful steps to infringe. Indeed, it contends that UCP engaged in infringing activity by selling its Inversion Trees into the U.S. market. MTD. at 12 ("UCP was admittedly selling inversion trees to Frontgate in order to be resold throughout the United States, including in California. Had Balsam wanted to sue UCP here, those facts alone established jurisdiction."). It even admits it considered bringing infringement claims against UCP as recently as December 6, 2016 based on those sales. Balsam cannot argue that UCP already engaged in allegedly infringing activity and then contend, with a straight face, that UCP has failed to take meaningful steps to infringe.

There is a clear case and controversy here. Balsam accused UCP's trees of infringement and brought suit against Frontgate based exclusively on Frontgate selling UCP's trees. It admits that it could have brought the same claims against UCP. While Balsam settled its claims against Frontgate, it did not resolve the underlying legal issue: were the Inversion Trees Frontgate was selling, and that UCP manufactures and sells, infringing Balsam's patents. The legal dispute between Balsam and UCP is alive and has not been resolved. Balsam's claim that it does not plan to sue UCP does not terminate the real case and controversy between the parties. This is a classic situation to use the Declaratory Judgment Act. Where a patent-holder refuses to bring suit, a potential infringer is entitled to resolve the legal issue by seeking a declaratory judgment. Balsam's motion to dismiss is DENIED.

**MOTIONS TO SEAL**

The parties have filed three motions to seal in conjunction with the briefing on Balsam's motion to dismiss. All three motions seek to seal specific facts and terms of the settlement agreement between Balsam and Frontgate. Balsam has filed two declarations in support of sealing Dkts. No. 42-4, 42-6, and 50-4. In these declarations it notes that it is filing these documents under seal because the parties to the Frontgate settlement agreed that the terms of the settlement would be confidential. This justification is insufficient to meet either the good cause or compelling interest standards for sealing. *See Select Portfolio Servicing v. Valentino*, No. 12-cv-0334-SI, 2013 WL 1800039, at *3 (Apr. 29, 2013).

In assessing whether documents may be filed under seal there is "a strong presumption in favor of access." *Foltz v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1135 (9th Cir. 2003). When seeking to seal documents relevant to a dispositive motion the designating party must demonstrate "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (internal quotations and citations omitted). As Judge Illston explained in *Valentino*, a settlement agreement cannot be sealed simply because the parties agreed to keep its terms confidential:

> Settling defendants' motion to file under seal is supported by a sole declaration, which only asserts that the material should be sealed because the parties agreed among themselves to make the settlement agreement confidential. This is insufficient. Not only have the settling defendants asserted no compelling reason to seal the information, they have not even made a showing that some specific harm or prejudice will result from its publication. . . . That they agreed among themselves to keep the settlement details private, without more, is no reason to shield the information from other non-settling parties to the case or the public at large."

*Valentino*, 2013 WL 1800039, at *3. Balsam's declarations, which state only that the parties agreed the settlement terms would be confidential, are insufficient to justify sealing Dkts. No. 42-4, 42-6, and 50-4. Balsam's motions to seal these documents are DENIED.

Balsam did not submit any declaration in support of sealing Dkts. No. 47-4 and 47-6 which UCP filed under seal because Balsam has indicated that information regarding the settlement

9

agreement with Frontgate is confidential. *See* Dkt. No. 47-1. Per Local Rule 79(e)(1), Balsam, the designating party, must file a declaration in support of sealing this information. Because it has not done so these requests are clearly deficient. The requests to seal these documents are also **DENIED**.

As it is possible that Balsam can offer a compelling reason to seal the documents provisionally filed under seal, the court will not unseal any of these documents yet. Within 14-days of this order, Balsam may file a supplemental declaration in support of sealing these documents. The declaration should articulate some specific harm or prejudice that would result from public disclosure of the settlement terms.

My ruling on each document filed under seal is outlined in the charts below:

**Dkt. No. 42**
**Balsam's Motion to Dismiss**

| Document Sought to Be Sealed | Dkt. No. | Portions of Document Sought to Be Sealed | Designating Party | Sealing Decl. | Basis for Sealing | Ruling |
|---|---|---|---|---|---|---|
| Balsam's Motion to Dismiss | 42-4 | Page 3, ll. 23-28; page 17, ll. 18-20 | Balsam | 42-1 | Agreed information would be confidential as term of settlement agreement | **DENIED** |
| Declaration of Marc Bernstein in support of Motion to Dismiss | 42-6 | Page 3, ll. 4-10 | Balsam | 42-1 | Agreed information would be confidential as term of settlement agreement | **DENIED** |

**Dkt. No. 47**
**UCP's Opposition to Balsam's Motion to Dismiss**

| Document Sought to Be Sealed | Dkt. No. | Portions of Document Sought to Be Sealed | Designating Party | Sealing Decl. | Basis for Sealing | Ruling |
|---|---|---|---|---|---|---|
| Opposition to Motion to Dismiss | 47-4 | Page 4, ll. 22-page 5, ll. 3. Page 16, ll. 13-17 | Balsam | None | Designated confidential by Balsam | **DENIED** |
| Exhibit 13 to Opposition | 47-6 | Entire Document | Balsam | None | Designated confidential by Balsam | **DENIED** |

| Dkt. No. 47 UCP's Opposition to Balsam's Motion to Dismiss ||||||
|---|---|---|---|---|---|
| **Document Sought to Be Sealed** | **Dkt. No.** | **Portions of Document Sought to Be Sealed** | **Designating Party** | **Sealing Decl.** | **Basis for Sealing** | **Ruling** |
| Reply in Support of Motion to Dismiss | 50-4 | Page 12, ll. 5, 7-8, 10-11 | Balsam | 50-1 | Agreed information would be confidential as term of settlement agreement | **DENIED** |

## CONCLUSION

UCP has demonstrated that Balsam has taken affirmative acts to enforce its patent rights against UCP's Inversion Tree and that UCP has actually manufactured and sold its Inversion Tree into the U.S. market. It has Article III standing to bring a declaratory judgment claim against Balsam. Balsam's motion to dismiss UCP's complaint for lack of standing is DENIED.

Balsam has failed to demonstrate compelling reasons to seal the documents provisionally filed under seal. The parties' motions to seal are DENIED, but the documents will currently remain locked on the Docket. Balsam may file a supplemental declaration in support of sealing within 14 days of this order.

**IT IS SO ORDERED.**

Dated: May 9, 2017

William H. Orrick
United States District Judge