UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UCP INTERNATIONAL COMPANY LIMITED, et al., | Case No. 16-cv-07255-WHO |
| Plaintiffs, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| BALSAM BRANDS INC., et al., | |
| Defendants. | |

## INTRODUCTION

Plaintiffs UCP International Co. Ltd. and Global United Enterprises Ltd. (collectively, "UCP") seek summary judgment of non-infringement against Balsam Brands Inc. and Balsam International Unlimited Co. (collectively, "Balsam") in this declaratory judgment action. UCP argues that its collapsible artificial Christmas tree, the Inversion Tree, does not literally infringe the Balsam's patents and that Balsam is barred from asserting the doctrine of equivalents as a theory of infringement. UCP also argues that if not doctrinally barred, the Inversion Tree does not infringe under the doctrine of equivalents. I previously issued a claim construction order in related litigation that collaterally estops Balsam from arguing for a different construction of critical terms; its expert in this case did not apply the terms as construed, and the vitiation doctrine dooms Balsam's doctrine of equivalents claim because the Balsam patents require a structural limitation that UCP's Inversion Tree does not have. For the reasons discussed below, I GRANT UCP's motion.

United States District Court
Northern District of California

# BACKGROUND

## I.     FACTUAL BACKGROUND

### A.     Frontgate Litigation

On October 20, 2015, Balsam filed a patent infringement lawsuit against UCP's customers, Cinmar, LLC d/b/a Frontgate / Grandin Road and Frontgate Marketing, Inc. (collectively, "Frontgate"), alleging that Frontgate was advertising and selling invertible artificial Christmas trees that infringe Balsam's patents. *Balsam Brands Inc. et al v. Cinmar, LLC et al, and Frontgate Marketing, Inc.*, 3-15-cv-04829-WHO (N.D.Cal.)(the "Frontgate Litigation") (Frontgate Dkt. No. 1). UCP made the trees that Frontgate sold. *Id.* As a part of the Frontgate Litigation, I held a *Markman* hearing, construing all disputed terms. Frontgate Dkt. No. 108. The construed terms are as follows:

| Term | Court's Construction |
|------|----------------------|
| "Pivot Joint" | A joint allowing pivoting of the second trunk relative to the first trunk by a mechanical connection between the first trunk and the second trunk from which the second trunk turns on a fixed point, changing the angle between the first trunk and the second trunk along their lengths. |
| "Pivoting" | Turning on a fixed point. |
| "Pivotably Attached" | Attached and permitting pivoting. |
| "Pivotably Joined" | Attached and permitting pivoting. |
| "Pivot Joint Element" | A pivot joint that is placed on a separate spacing element to distance the pivot joint away from the end of the second trunk. |
| "Rotating" and "Rotation" | Turning around a fixed point. |

*Id.* The parties later stipulated to a dismissal with prejudice on December 19, 2017, which I entered the next day. Frontgate Dkt. Nos. 154, 155.

### B.     The Balsam Patents

The patents at issue relate to invertible Christmas trees and the way in which they are deployed. U.S. Patent No. 8,062,718 B2 ("the '718 Patent") (Dkt. No. 69-2); U.S. Patent No. 8,993,077 B2 ("the '077 Patent") (Dkt. No. 69-3). In order to simplify the set up and storage of

these trees, the inventor of the Balsam patents, Bruce Schooley, designed an invertible tree with two trunks, one fixed and the other rotating, attached by a mechanical connection referred to as a "pivot joint." '718 Patent col. 2:16-24. All of the independent claims in the '718 Patent require a "pivot joint." *See* '718 Patent claims 1, 11, 19. Additionally, the independent claims in the '077 Patent require a "pivot joint element," which includes the requisite "pivot joint," or that the trunks are "pivotably attached." *See* '077 Patent claims 1, 6, 11, 17. Throughout both the '718 Patent and the '077 Patent, the motion made by these "pivot joints" is described interchangeably as "rotation" and "pivoting." Bernstein Decl., Exh. A, Frontgate Claim Construction Order ("Frontgate Order") at 14 (Dkt. No. 101-1) ("The patents consistently use both "pivot" and "rotate" in the undisputed ordinary and customary sense of the word 'pivot[]'").

### C.    UCP's Inversion Tree

Like the invertible Christmas trees in the Balsam patents, UCP's Inversion Tree contains two trunk portions. McCarthy Decl. ¶ 50. The trunk portions are connected by a slotted plate with "pins" or "connectors." *Id.* ¶ 59. The first trunk is connected to the slotted plate, and the second moving trunk is attached to the plate by the pins, which rest inside the slot. *Id.* ¶ 60. In order to invert the Inversion Tree, the pins move across the slot, deploying the second trunk. *Id.* ¶ 63. All of UCP's trees are materially identical for the purposes of infringement. *See* Frontgate Dkt. No. 42 at 11, n.8.

## II.    PROCEDURAL BACKGROUND

UCP filed this lawsuit for a declaratory judgment of non-infringement on February 28, 2017. First Amended Complaint (Dkt. No 26). I issued an order denying Balsam's motion to dismiss on May 9, 2017, finding that UCP had standing to bring this declaratory suit. Dkt. No. 60. UCP now moves for summary judgment of non-infringement as to all claims of the '718 Patent and the '077 Patent. Dkt. No. 69. I heard argument on September 20, 2017.

LEGAL STANDARD

## I.  SUMMARY JUDGMENT OF NON-INFRINGEMENT

Summary judgment of non-infringement requires a two-step analysis. "First, the claims of the patent must be construed to determine their scope. Second, a determination must be made as

to whether the properly construed claims read on the accused device." *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) (internal citations omitted). "The determination of infringement, both literal and under the doctrine of equivalents, is a question of fact." *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003); *see also Kilopass Tech. Inc. v. Sidense Corp.*, No. 10–cv–02066–SI, 2012 WL 3545286, at *4 (N.D. Cal. Aug. 16, 2012). Because the ultimate burden of proving infringement rests with the patentee, an accused infringer may show that summary judgment of non-infringement is proper either by producing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to create a material factual dispute as to any essential element of the patentee's case. *See Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). "Summary judgment of non-infringement may only be granted if, after viewing the alleged facts in the light most favorable to the nonmovant and drawing all justifiable inferences in the nonmovant's favor, there is no genuine issue whether the accused device is encompassed by the patent claims." *Id.*

Direct infringement may be proven either by literal infringement or under the doctrine of equivalents. "Literal infringement requires the patentee to prove that the accused device contains each limitation of the asserted clai[m]." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Id.* "The doctrine of equivalents holds that even if an accused product does not literally infringe the asserted claims of a patent, the product may infringe if the differences between the element of the accused product at issue and the claim limitation at issue are insubstantial." *Kilopass*, 2012 WL 3545286, at *7.

To defeat a defendant's motion for summary judgment of non-infringement under the doctrine of equivalents, the plaintiff must provide "particularized testimony and linking argument on a limitation-by-limitation basis that create[s] a genuine issue of material fact as to equivalents." *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1328–29 (Fed. Cir. 2007). "Whether equivalency exists may be determined based on the 'insubstantial differences' test or based on the 'triple identity' test, namely, whether the element of the accused device performs substantially the

4

same function in substantially the same way to obtain the same result." *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1376 (Fed. Cir. 2008). "Whether a claim is infringed under the doctrine of equivalents may be decided on summary judgment if no reasonable jury could determine that the limitation and the element at issue are equivalent." *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1317 (Fed. Cir. 1999).

## DISCUSSION

## I.  COLLATERAL ESTOPPEL

As a threshold matter, UCP asserts that the doctrine of collateral estoppel demands that the Frontgate Order apply to all independent claims of Balsam patents in this action. Balsam argues that collateral estoppel should not apply to the Frontgate Order because, as a non-appealable interlocutory order, the Frontgate Order is not sufficiently final to give rise to collateral estoppel. I am not persuaded by Balsam's argument.

The doctrine of collateral estoppel prevents the relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity to be heard, in a prior proceeding. *Kourtis v. Cameron*, 419 F. 3d 989, 994 (9th Cir. 2005). A prior decision has preclusive effect where: (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding. *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000). Because collateral estoppel is a procedural issue not within the Federal Circuit's exclusive jurisdiction, Ninth Circuit law controls. *See Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1353 (Fed. Cir. 2017).

Balsam's arguments against collateral estoppel address only the second element. The same issues of claim construction in the Frontgate Order are clearly present in this case. In the Frontgate Order, I construed Balsam's '718 and '077 patent claims as a matter of law and

expressly defined the key terms, and the same patent claims are at issue here. Balsam was a party to the Frontgate litigation, which satisfies the third element.

I now turn to the disputed element of collateral estoppel — whether the Frontgate Order was a "final judgment on the merits."[1] Relying on *St. Paul Fire & Marine Insurance Co. v. F.H.*, 55 F.3d 1420, 1425 (9th Cir. 1995), Balsam argues that because the Frontgate Order is an interlocutory order that is not appealable, it is not "sufficiently firm" for the purposes of collateral estoppel. UCP counters that (i) *Luben Industries v. United States of America,* 707 F.2d 1037, 1040 (9th Cir. 1983), not *St. Paul Fire*, provides the correct test for finality for the purposes of collateral estoppel in the Ninth Circuit, and (ii) applying the *Luben* standard, the Frontgate Order is clearly preclusive.

*Luben* provides the appropriate finality standard. It predates *St. Paul Fire* and is widely followed in this Circuit. *St. Paul Fire*, on the other hand, considered whether a partial summary judgment is a final judgment for purposes of collateral estoppel under Alaskan law, not federal law. If *St. Paul Fire* reflects Ninth Circuit collateral estoppel law at all, it does so in a different context, the preclusive effect of partial summary judgments. *See, e.g.*, *Kottom v. Walker*, 14-cv-04492-LB, 2015 WL 7301849, at *4 (N.D. Cal. Nov. 25, 2015) ("[A] partial summary judgment has no preclusive effect"). *St. Paul Fire* does not apply.

For the Frontgate Order to be final for the purposes of collateral estoppel, it must be "sufficiently firm." *See Luben*, 707 F.2d at 1040. Several factors aid in determining whether a decision is "sufficiently firm": (1) whether the decision was not avowedly tentative; (2) whether the parties were fully heard; (3) whether the court supported its decision with a reasoned opinion; and (4) whether the decision was subject to an appeal or in fact reviewed on appeal. *Id.*

---

[1] The parties each address whether the settlement agreement was a final judgment on the merits. Because the relevant finality inquiry for collateral estoppel purposes goes to the finality of the claim construction order and not the settlement agreement, I will not address these arguments.

Consideration of these factors establishes that the Frontgate Order is sufficiently firm for the purposes of collateral estoppel. Nothing in the Frontgate Order denotes that the decision was "avowedly tentative." A *Markman* hearing was conducted, giving Balsam the opportunity to fully litigate the issues. My claim construction decision was supported by a reasoned opinion in a 22–page order. That the Frontgate Order cannot now be appealed is not sufficient to counterbalance the factors that weigh in favor of collateral estoppel. The requirements for collateral estoppel are met; the Frontgate Order applies to all of the independent claims of the Balsam patents here.

## II. LITERAL INFRINGEMENT

UCP argues that its trees lack all the key limitations in the independent claims of the Balsam patents: (1) the trees do not have a "pivot joint"/"pivot joint element"; (2) the trees do not allow "pivoting"; (3) the trees do not have a first trunk "pivotably attached" or "pivotably joined" to a second trunk; and (4) the trees do not have a "rotating" second trunk. Mot. at 14. In response, Balsam relies solely on its expert, Dr. McCarthy. In his expert report, McCarthy asserts that under the Frontgate Order, UCP's Inversion Tree contains all critical limitations in the independent claims and literally infringes on Balsam's patents. McCarthy Decl. ¶¶ 70–96 (Dkt. No. 100).

UCP challenges the use of the McCarthy's declaration, arguing that McCarthy does not use the Frontgate Order in his analysis despite purporting to do so. Reply at 11. I agree. Although McCarthy claims to apply the Frontgate Order in his declaration, his application of it is inconsistent with its plain language and meaning.

McCarthy proclaims that UCP's slotted plate design is literally a pivot joint in two ways: (1) the movable trunk portion turns on a fixed center on the slotted plate, and (2) the movable trunk portion turns on either pin in the slotted plate, and each pin is fixed relative to the movable trunk portion. McCarthy Decl. ¶¶ 71, 77. Each of these explanations ignores express language from the Frontgate Order construing a "pivot joint" as "a mechanical connection . . . *from which* the second trunk *turns on* a fixed point." Frontgate Order at 7 (emphasis added).

By describing the "fixed center on the slotted plate" as consistent with the required "fixed point" of a "pivot joint," McCarthy ignores that the second trunk must be connected to the fixed

point. If there is no connection between the fixed point and the second trunk, it is impossible for the trunk to "turn[] on the fixed point." There is no connection between the fixed center of the slotted plate and the second trunk. McCarthy's first explanation is inconsistent with the express language and meaning of the Frontgate Order.

McCarthy also characterizes the pins that move along the slotted plate as "fixed point[s]" because their "location is unchanging with respect to the movable trunk portion." McCarthy Decl. ¶ 80. I rejected the argument supporting this characterization in the Frontgate Order. *See* Frontgate Order at 15-17. Relative movement and "pivoting" are fundamentally different concepts. *Id.* at 15-16. McCarthy's statements ignore that the Frontgate Construction requires the second trunk to turn on a fixed point. The pins of the Inversion Tree move along the track and are not fixed during the deployment of the tree. It is impossible for the pins to act as the connection from which the second trunk turns on a fixed point.

McCarthy's assertions are plainly inconsistent with the language and meaning of the Frontgate Order. He concludes that the Inversion Tree literally infringes Balsam's patent without any basis to support his conclusions. Though he purports to analyze the Inversion Tree under the Frontgate Order, he clearly does not. His declaration fails to raise a genuine issue of material fact as to the literal infringement analysis. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed.Cir.2004) ("an expert's unsupported conclusion on the ultimate issue . . . is insufficient to raise a genuine issue of material fact").

Because Balsam solely relies on McCarthy's declaration to survive summary judgment of non-infringement, and his declaration does not raise a genuine issue of material fact, Balsam has not met its summary judgment burden. Accordingly, I GRANT UCP's motion for summary judgment of non-infringement as to literal infringement.

## III. DOCTRINE OF EQUIVALENTS

"Under the doctrine of equivalents, a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is equivalence between the elements of the accused product or process and the claimed elements of the patented invention." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1357 (Fed.

Cir. 2005).  The doctrine of equivalents supports the proposition that "[t]he language in the patent claims may not capture every nuance of the invention or describe with complete precision the range of its novelty." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731 (2002).  "The scope of a patent is not limited to its literal terms but instead embraces all equivalents to the claims described." *Id.*  Although a patentee is entitled to claim that an accused device is equivalent to the claimed invention, the doctrine of equivalents is not without limitations.

UCP argues that the doctrine of equivalents does not apply in this case because: (1) prosecution history estoppel bars any claim of infringement by equivalents; (2) the vitiation doctrine bars infringement under the DOE; (3) the disclosure-dedication doctrine bars claims of infringement under the DOE; and (4) in the absence of a doctrinal bar, the design of UCP's track mechanism uses engineering principles that are substantially different than the pivot joint claimed in the Balsam patents.  Balsam maintains that its claims of infringement under the doctrine of equivalents can go forward because: (1) UCP misinterprets the prosecution history of the patents at issue and read correctly, prosecution history estoppel does not bar infringement claims; (2) the doctrine of vitiation fails because a finding that UCP's device is the equivalent of a "pivot joint" does not read "pivot joint" out of the claims; and (3) the patent holder claimed all variation of his pivotable couplings and other couplings.  I conclude that the vitiation doctrine does apply to prevent a theory of doctrine of equivalents because the Balsam patents require pivoting as a structural limitation and UCP's trees do not pivot.  I also conclude that no reasonable jury could find that UCP's trees infringe under the doctrine or equivalents.

### A.      Prosecution History Estoppel Does Not Bar DOE

There are two forms of prosecution history estoppel: amendment-based estoppel and argument-based estoppel.  Amendment-based estoppel occurs when an applicant, during prosecution, either narrows a claim "to avoid the prior art, or otherwise to address a specific concern . . . that arguably would have rendered the claimed subject matter unpatentable." *Warner–Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 30–31 (1997).  Argument-based estoppel occurs when an applicant makes an argument evincing a "clear and unmistakable surrender" of subject matter. *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir.

United States District Court
Northern District of California

1999). The applicant is then estopped from later invoking the doctrine of equivalents to recapture the surrendered subject matter. *Festo*, 535 U.S. at 734. The patentee bears the burden of rebutting the application of prosecution history estoppel. *Id.* at 740–41.

Neither form of estoppel applies here.

### 1.    Amendment-based Estoppel

Where claims are amended, "the inventor is deemed to concede that the patent does not extend as far as the original claim," and the patentee has the burden of showing that the amendment does not surrender the particular equivalent. *Id.* at 737. To succeed, then, the patentee must establish that: (1) the equivalent was unforeseeable at the time the claim was drafted; (2) the amendment did not surrender the particular equivalent in question; or (3) there was some reason why the patentee could not have recited the equivalent in the claim. *Id.* at 740–41.

During the prosecution of the '077 Patent, Schooley made amendments to the Balsam patents in order to avoid prior art after the examiner rejected claims as being anticipated by U.S. Patent No. 3,970,834. Peden Exh. I (Dkt. No. 69-10). Smith's patent covered an artificial Christmas tree that was deployed by threaded couplings at each trunk's ends. *Id.* at 8. Schooley amended the patent "to require that the two trunk portions be pivotably attached at a location spaced from said first end and said second end of said second trunk portion." *Id.* Schooley also added limitations "directed to the unique manner in which the tree of this invention has the two trunk portions thereof pivot relative to each other." *Id.* This amendment looks to be substantially related to patentability, in that Schooley stated to the patent office that the amendment makes the claim "patentably distinct from the teachings of Smith and in a form warranting allowable status." *Id.*; *see also Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366-67 (Fed. Cir. 2003). Schooley presumptively "surrendered all territory between the original claim limitation and the amended claim limitation," and consequently, Balsam cannot apply doctrine of equivalents in that territory. *Festo*, 344 F.3d at 1367 (citing *Festo*, 535 U.S. at 740).

Balsam argues that the *Festo* presumption is not relevant because Schooley made the amendments to exclude couplings that "attached by threading together at their ends around a shared axis." Opp'n at 14. Schooley did not surrender a mechanism that changes the angles

between the attached trunks. *Id.* UCP contends that, from the prosecution history, a reasonable competitor would conclude that Schooley surrendered all rotational couplings that are not "pivotably attached." Mot. at 16. I am not persuaded by this argument.

The scope of the estoppel is confined by the nature of the narrowing amendment. *See Festo*, 535 U.S. at 737-38 ("There is no reason why a narrowing amendment should be deemed to relinquish equivalents . . . beyond a fair interpretation of what was surrendered."); *see also Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1291-92 (Fed. Cir. 2010) ("rationale for the amendment" had "only a tangential relation to" equivalency outside it). In amending his claims, the territory surrendered by Schooley does not cover the range of equivalents relevant to the accused products. Instead, Schooley surrendered rotatable couplings attached by threading at their ends, not all rotatable couplings. The Inversion Tree lies "beyond a fair interpretation of what was surrendered" in prosecution, and amendment-based estoppel does not preclude Balsam from arguing that the Inversion Tree infringes via the doctrine of equivalents. *See Festo*, 535 U.S. at 738.

### 2.    Argument-based Estoppel

"To invoke argument-based estoppel, the prosecution history must evince a clear and unmistakable surrender of subject matter." *AquaTex Industries, Inc. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005) (internal quotation omitted). To determine if subject matter has been relinquished, an objective test is applied, inquiring "whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998).

Nothing in the evidence demonstrates a clear and unmistakable surrender of subject matter required to invoke argument-based prosecution history estoppel. Schooley's arguments during prosecution, and the addition of the claim limitation clarifying the nature of the attachment, indicate that Schooley was distinguishing the point of attachment as well as the movement of the two trucks relative to each other from the Smith patent. The subject matter surrendered by the narrowing amendment does not clearly and unmistakably reach all type of rotatable couplings but rather tree trunks that rotate via threading on a shared axis. UCP's Inversion Tree falls outside the

subject matter Schooley clearly and unmistakably surrenders.  Argument-based estoppel does not bar Balsam from arguing that the Inversion Tree infringes Balsam's patents under the doctrine of equivalents.

### B.        The Vitiation Doctrine Applies

"[A]n element of an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005) (internal quotations omitted).  If a court determines that a theory of equivalents would vitiate a claim, this determination fully precludes an assertion of infringement under the doctrine of equivalents. *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998) ("If a theory of equivalence would vitiate a claim limitation, . . . then there can be no infringement under the doctrine of equivalents as a matter of law.").  The vitiation doctrine applies in this case.

To determine if a finding of equivalence would vitiate a claim limitation, "courts must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." *Id*.  Relevant factors are "the simplicity of the structure, the specificity and narrowness of the claim, and the foreseeability of variations at the time of filing the claim with the PTO." *Id*. at 1360.  Courts must also consider whether the difference between the claimed element and the corresponding characteristic in the accused device "is a subtle difference in degree" as opposed to a "clear, substantial difference or difference in kind." *Id*. at 1360–61.  The narrower the invention's claims, the less likely infringement by equivalence will be found. *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 955 (Fed. Cir. 2006).

Balsam argues that claim vitiation does not apply unless a finding that UCP's inversion mechanism is an equivalent of a "pivot joint" reads the term entirely out of the claims.  Opp'n at 14.  UCP counters that the correct understanding is that claim vitiation is a "[doctrine of equivalents] theory that 'renders a claim limitation inconsequential or ineffective.'"  Reply at 13 (quoting *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016)).  UCP further asserts that under the correct standard, it is clear that "pivot joint" refers to a specific

structural and functional limitation and not to all joints that allow for inversion. *See id.* at 13-14.

In prosecuting the patents, Schooley used clear language that imposed a narrowing structural limitation, and that language necessarily limits the scope of possible equivalents. This scope does not include the track mechanism of the Inversion Tree. The claims at issue define a relatively simple structural device, the "pivot joint." If Schooley desired broad patent protection for any mechanism that allowed for inversion of trees, he could have sought claims without this structural limitation. But he did not. The public record reflects a manifest intention to claim the "pivot joint" structure as a means of inverting trees and no more. Balsam now seeks to expand these claims through the doctrine of equivalents, but its theory of equivalence would "erase "meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement." *Conopco, Inc. v. May Dept. Stores Co.*, 46 F.3d 1556, 1562 (Fed. Cir. 1994).

Balsam's claims require a "pivot joint," a "pivot joint element," or that the trunks are "pivotably attached." Each of these terms requires pivoting as a way of deployment of the invertible tree. In contrast, the Inversion Tree uses a track mechanism that connects the trunks by a bracket with pins and uses translational movement to deploy the second trunk. The track mechanism does not turn on a fixed point but rather inverts the second trunk by allowing the pins to move forward around the track. Further, the Inversion Tree relies on translational movement as opposed to rotation of the trunks.

These structural differences are not a "subtle difference in degree," but rather, "a clear, substantial difference or difference in kind." *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1321 (Fed. Cir. 1998). The Balsam patents require pivoting as a structural limitation. The track mechanism in the Inversion Tree does not pivot. To find that Inversion Tree track mechanism is an equivalent to Balsam's patent would read this pivoting limitation out of the claims.

In short, utilization of the doctrine of equivalents would vitiate the limitations in Balsam's claims. UCP structured the track mechanism of its trees in a substantially different manner than Balsam's required pivot joint. Balsam cannot use the doctrine of equivalents theory of

infringement.

Accordingly, I GRANT UCP's motion for summary judgment of non-infringement as to infringement under the doctrine or equivalents.

### C.     UCP Does Not Infringe Under DOE

If claim vitiation did not bar Balsam from using the doctrine of equivalents theory of infringement, its theory of infringement would still fall short.  Under the doctrine of equivalents, infringement may be found if the Inversion Tree performs substantially the same function as the Balsam trees, in substantially the same way, to obtain substantially the same result (the "function-way-result test").  *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608 (1950). If any one of these three elements of equivalence is not present in the Inversion Tree, then there is no infringement by equivalence.  *Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422, 1425–27 (Fed.Cir.1989).

Balsam relies solely on the declaration of McCarthy to survive summary judgment.  In his report, McCarthy asserts that under the Frontgate Order, elements of the UCP's Inversion Tree are equivalent to claims from Balsam's patents.  *See* McCarthy Decl. ¶¶ 97-119.  McCarthy's doctrine of equivalents analysis suffers from the same deficiencies as his literal infringement analysis.  In applying the "function-way-result test," McCarthy repeatedly mischaracterizes the track mechanism's "pins" and "fixed center" as fixed points consistent with the Frontgate Order.  As in his literal infringement analysis, McCarthy concludes infringement without any basis to support his conclusions.  His declaration fails to raise a genuine issue of material fact as to the infringement analysis under the doctrine of equivalents.  *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed.Cir.2004) ("an expert's unsupported conclusion on the ultimate issue . . . is insufficient to raise a genuine issue of material fact").A comparison of Balsam's patent to the tracking mechanism of the Inversion Tree also makes it unlikely that Balsam could satisfy the "function-way-result test."  The Inversion Tree does not perform the same function in substantially the same way as the Balsam claims.  Balsam's claims require a "pivot joint," a "pivot joint element," or that the trunks are "pivotably attached."  With each of these limitations, Balsam's mechanisms function by allowing the second trunk to turn on a fixed

14

point for deployment. In contrast, the Inversion Tree uses a track mechanism that uses translational movement to deploy the second trunk. The track mechanism does not turn on a fixed point but rather inverts the second trunk by allowing the pins to move forward around the track. No reasonable jury could conclude that the Inversion Tree performs substantially the same function as the Balsam trees, in substantially the same way, to obtain substantially the same result as the Balsam trees because the track mechanism of UCP's trees uses engineering principles that are substantially different than Balsam's pivot joint.

## CONCLUSION

UCP's Inversion Tree does not literally infringe Balsam's patents. There is no infringement by equivalence, and Balsam is also barred from asserting a doctrine of equivalents theory of infringement by the claim vitiation doctrine.[2] Accordingly, I GRANT UCP's motion for summary judgment of noninfringement. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: November 3, 2017

_____
William H. Orrick
United States District Judge

United States District Court
Northern District of California

---

[2] In light of these conclusions, it is unnecessary to reach UCP's argument regarding the disclosure-dedication doctrine.